## AFFIDAVIT OF SGT. DET. JAMES FITZPATRICK

I, James FitzPatrick, being duly sworn, depose and state as follows:

1. I am a Sergeant Detective with the Boston Police Department where I have been employed for more than 21 years. I am currently the Supervisor of the Drug Control Unit ("DCU") in District D-4, which covers neighborhoods in the Back Bay, South End, Lower Roxbury, and Fenway areas of Boston.

2. During my tenure with the Boston Police Department, I have participated in investigations relating to the distribution of controlled substances including cocaine, cocaine base (also known as "crack cocaine"), heroin, marijuana, and other illegal drugs and have received training in the area of narcotics investigations. I have been the affiant on affidavits in support of search warrants, arrest warrants, and other applications. I am also familiar with the unique color, texture, and appearance of crack cocaine and have been called on to identify it in the field on dozens of occasions.

3. This affidavit is submitted in support of an application for a criminal complaint charging **DEWANE TSE, a/k/a "BOO,"** with distributing cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841. On May

15, 2009, **TSE** sold crack cocaine to a Boston Police Department undercover officer ("the UC") in the area of Albany Street and Massachusetts Avenue in the South End neighborhood of Boston.

4. I am familiar with and participated in the underlying investigation. I have also reviewed reports and spoken with the UC who made the purchase from **TSE** and with other officers involved with me in the investigation.

5. This affidavit does not set forth all the facts developed during the underlying investigation. Rather, it sets forth facts I believe to be sufficient to establish probable cause to believe that **TSE** committed the crime set forth in the accompanying Criminal Complaint on May 15, 2009.

6. Earlier this year, the Boston Police Department received information that "BOO" was selling cocaine base in the South End and other areas of Boston. Based on that information, officers from the D-4 DCU were able to establish that "BOO," who was subsequently determined to be **DEWANE TSE,** was using phone number 857-236-2553 in support of those operations.

7. On May 15, 2009, at approximately 6:30 p.m., members of the D-4 DCU were conducting drug operations in the area of the South End neighborhood of Boston. As part of that operation, a Boston Police Department UC called 857-236-2553 to attempt to set up a crack cocaine purchase from "BOO." The UC spoke with a person who identified himself as "BOO" and was later identified

as **TSE**. The UC told **TSE** that he/she wanted to buy $80.00 of crack (street terminology for a smokeable form of cocaine base). **TSE** told the UC that he was in Dorchester and he could meet up with the UC in twenty minutes. The UC told **TSE** they could meet at the CVS on Harrison Avenue.

8. At approximately 7:16 p.m. the UC called **TSE** at 857-236-2553 to see where he was. **TSE** told the UC to meet him at the entrance of the hospital. The UC asked if **TSE** was referring to the Boston Medical Centre ("BMC") on Albany Street and **TSE** confirmed that he was.

9. Before the UC went to the meet location, he/she was provided with $80.00 of pre-recorded Boston Police Department "buy money" to be used in making any drug purchase from **TSE** and a non-recording transmitter.

10. The UC then went to the MBTA bus stop located across from the emergency room at the BMC. Other units were also sent to the area both to conduct surveillance and to assist the UC if needed.

11. At approximately 7:20 p.m., a green Honda Civic bearing MA Reg 272DW3 stopped at the red light at the emergency room entrance on Albany Street. The Civic contained two occupants. The UC saw the driver place a call on his phone and put the phone to his ear. At this time, the UC's cell phone began to ring. **TSE'S** number appeared on the UC's caller id. **TSE** asked the UC

where he was and the UC asked **TSE** if he had just arrived in the green Civic. **TSE** told the UC that he was in the Civic and the UC went across the street to meet up with **TSE**.

12. After parking the car, **TSE** got out and told the UC "I'm not doing it in the car." The UC and **TSE** walked approximately ten feet down Albany Street towards Massachusetts Avenue when **TSE** spit four small objects, subsequently identified as $20.00 bags of crack cocaine, into his hand. **TSE** then handed the items to the UC who gave **TSE** the $80.00 of recorded buy money. The UC and **TSE** then "bumped" fists and went their separate ways. **TSE** returned to the green Civic and got into the passenger seat while the other occupant got into the driver's seat and drove away.

13. Members of the D-4 DCU followed the green Civic until a marked police car could conduct a stop of the car at the intersection of Dearborn Street and Dudley Street in Roxbury. **TSE** was placed under arrest and the driver, who was identified as Dennis Levy, was FIOed and released. The previously recorded buy money was recovered from **TSE'S** pocket along with a cell phone. The call log on the cell phone showed that a call to the UC's phone number went out at 7:20 p.m. and a call from the UC's phone number came in at 7:16 p.m. While **TSE** was standing with the officers a plastic bag of marijuana fell out of his pants.

14. **TSE** was brought to the D-4 police station and Detective

Greg Walsh read him his <u>Miranda</u> warnings, which **TSE** said he understood. Detective Walsh informed **TSE** that the officers were seeking permission to conduct a strip search. **TSE** stated, "I am not even going to waste your time," reached into the rear of his pants and handed another officer five plastic bags, each containing a rock-like substance that was identified as crack cocaine. A strip search was conducted and no further contraband was found.

15.   The drugs purchased by the UC and seized at district D-4 were thereafter inspected by me and the UC and determined to be crack cocaine. I also field tested one of the rocks purchased by the UC. It tested positive for the presence of cocaine base. The drugs were then logged into evidence so that they could be sent to the state laboratory for further testing.

16.   Based upon the foregoing, I submit there is probable cause to believe that, on May 15, 2009, **DEWANE TSE, A/K/A "BOO,"** did distribute cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.

JUN - 8 2009

Signed under the pains and penalties of perjury this ___ day of June, 2009.

_____
SGT. DET JAMES FITZPATRICK

JUN - 8 2009

Sworn to and subscribed before me this ___ day of June, 2009.

_____
HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE